Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000178
27-DEC-2018
07:55 AM

NO. CAAP-16-0000178

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

DEBORAH LYN KEKUAWELA RAMIREZ, Plaintiff-Appellant,
v.
AURORA LOAN SERVICES, LLC, a Delaware Limited Liability
Company, Mortgage Electronic Registration Systems, Inc.,
Defendants-Appellees,
and
DOES 1-50, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 11-1-1767)

---

AURORA LOAN SERVICES, LLC, A Delaware Limited Liability Company,
Plaintiff-Appellee,
v.
DEBORAH LYN KEKUAWELA RAMIREZ, Defendant-Appellant,
and
JOHN DOES 1-50, AND JANE DOES 1-50, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 11-1-2150)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Fujise and Leonard, JJ.)

I.    **Introduction**

Plaintiff-Appellant Deborah Lyn Kekuawela Ramirez
(**Ramirez**) appeals from the consolidated "Final Judgment" entered
on March 14, 2016 by the Circuit Court of the First Circuit

(**circuit court**).[1]  Ramirez also challenges the Final Judgment's underlying orders: the "Order Granting Defendants Aurora Loan Services, LLC [(**Aurora**)] and Mortgage Electronic Registration Systems, Inc.'s [(**MERS**)] Motion for Summary Judgment, Filed August 29, 2013" entered on April 16, 2014 in Civil No. 11-1-1767-08 (**Quiet Title Action**) and the "Order Granting [Aurora's] Motion for Summary Judgment and Writ of Possession Filed November 7, 2014" entered on July 13, 2015 in Civil No. 11-1-2150-09 BIA (**Possession Action**).[2]

On appeal, Ramirez contends that the circuit court erred when it (1) granted Appellees' August 29, 2013 Motion for Summary Judgment in the Quiet Title Action because Aurora failed to meet its initial burden to establish that the non-judicial foreclosure sale was conducted in a manner that was fair, reasonably diligent, and in good faith, and to demonstrate that an adequate price was procured for the property; (2) granted Aurora's November 7, 2014 "Motion for Summary Judgment and Writ of Possession" (**MSJ for Possession**) in the Possession Action because there were genuine issues of material fact as to whether Aurora breached a contract upon the completion of a Trial Period Plan; (3) granted Aurora's MSJ for Possession because there were genuine issues of material fact as to whether Aurora had the authority to conduct a power of sale non-judicial foreclosure under Hawaii Revised Statutes (**HRS**) § 667-5 (Supp. 2010) (repealed 2012); (4) granted Aurora's MSJ for Possession where Ramirez requested additional time to conduct discovery into whether the alleged non-judicial foreclosure was effectuated by fraud; (5) granted Aurora's MSJ for Possession because there were genuine issues of material fact as to whether Aurora acted with dishonest purpose and conscious wrongdoing constituting a breach of the implied covenant of good faith and fair dealing; (6) granted Aurora's MSJ for Possession because there were genuine

---

[1]  The Honorable Bert I. Ayabe presided over all circuit court matters in this case.

[2]  On July 13, 2012, the circuit court granted Ramirez's motion to consolidate both cases under Civil No. 11-1-1767-08, the Quiet Title Action.

issues of material fact as to whether Aurora was estopped from foreclosing upon Ramirez's home while simultaneously promising her it would process her loan modification application in good faith; and (7) granted Aurora's MSJ for Possession because there were genuine issues of material fact as to whether Aurora engaged in unfair and deceptive acts and practices in violation of HRS §§ 480 *et seq.*, by making deceptive and misleading representations to Ramirez regarding her eligibility for a permanent loan modification.

## II. Background

### A. Facts

On or about July 11, 2006, Ramirez refinanced the purchase of her property located on Kulala Place in Wai'anae, Hawai'i (**the property**) by executing a promissory note in favor of First National Bank of Arizona (**the Note**). The Note was secured by a mortgage on the property dated July 11, 2006 in favor of MERS, solely as nominee for First National Bank of Arizona and its successors and/or assigns, recorded in the Bureau of Conveyances of the State of Hawai'i (**BOC**) on July 24, 2006 (**Mortgage**) (with the Note, **the Loan**).

Around May 2008, Ramirez became delinquent on her Loan.

On January 9, 2009, a notice of default was sent to Ramirez, stating that she had thirty days to cure the default. It does not appear from the record that Ramirez cured her default in that time frame.

On April 6, 2009, a Corporate Assignment of Mortgage was executed transferring the Mortgage from MERS to Aurora. Aurora's Notice of Mortgagee's Intention to Foreclose Under Power of Sale was recorded in the BOC the same day.

Also in April 2009, in order to avoid foreclosure, Ramirez applied for a loan modification (**First Application**) with Aurora. However, Aurora denied Ramirez's First Application, stating Ramirez was ineligible under federal Home Affordable Modification Program (**HAMP**) guidelines.

In September 2009, pursuant to a September 3, 2009 letter from Aurora, Ramirez applied for another loan modification

(**Second Application**) with Aurora and entered into a HAMP Trial Period Plan, also overseen by Aurora. Pursuant to the Trial Period Plan, Ramirez was required to make three monthly payments and provide updated financial documentation to Aurora. Ramirez made the monthly payments but, according to Aurora, did not provide the requested documentation, despite being granted two extensions to do so. As a result, on August 5, 2010, Aurora denied Ramirez's Second Application.

On September 10, 2010, Aurora conducted a public auction of the property. Aurora or its designee bid the amount of $265,000.00 and was declared the highest bidder.

On October 4, 2010, Aurora's Affidavit of Foreclosure Sale Under Power of Sale (**Affidavit of Foreclosure Sale**) was recorded in the BOC.

On February 25, 2011, Aurora's "Mortgagee's Grant Deed Pursuant to Power of Sale" (**Grant Deed**) was recorded by the BOC, thus transferring ownership of the property to Aurora.

B.    **Procedural History**

On February 15, 2012, in the Quiet Title Action, Ramirez filed her First Amended Complaint against Aurora and MERS (collectively, **Appellees**), asserting claims of beach of contract, breach of implied covenant of good faith and fair dealing, promissory estoppel as an alternative theory, unfair and deceptive acts and practices, wrongful foreclosure, and quiet title.

On September 19, 2011, in the Possession Action, Aurora filed its "Complaint for Ejectment" against Ramirez.

On June 7, 2012, the circuit court granted Ramirez's motion to consolidate both the Quiet Title and Possession Actions.

On August 29, 2013, Appellees moved for summary judgment in the Quiet Title Action with respect to Ramirez's First Amended Complaint. Attached to Appellees' motion was a partial transcript of Ramirez's October 22, 2012 deposition, taken by Appellees.

On November 26, 2013, Ramirez filed her opposition to Appellees' motion for summary judgment in the Quiet Title Action.

4

Attached to this motion was, *inter alia*, a declaration from Ramirez's counsel requesting a continuance to conduct further discovery pursuant to Hawai'i Rules of Civil Procedure Rule (**HRCP**) 56(f).

On April 16, 2014, the circuit court entered its Order granting Appellees' motion for summary judgment in the Quiet Title Action.

On November 7, 2014, Aurora filed its MSJ for Possession against Ramirez with respect to its Complaint in the Possession Action. Attachments to this motion included, *inter alia*, Aurora's Affidavit of Foreclosure Sale and Aurora's Grant Deed.

On July 13, 2015, the circuit court entered its Order granting Aurora's MSJ for Possession.

On March 14, 2016, the circuit court entered its consolidated Final Judgment.

On March 17, 2016, Ramirez timely filed her notice of appeal from the consolidated Final Judgment.

## III. Standard of Review

The appellate court reviews "the circuit court's grant or denial of summary judgment *de novo*." Querubin v. Thronas, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005) (citing Hawai'i Cmty. Fed. Credit Union v. Keka, 94 Hawai'i 213, 221, 11 P.3d 1,9 (2000))

The Hawai'i Supreme Court has often articulated that:

> [s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Id. (citation omitted).

IV.  **Discussion**

A.  **Point of Error 1**

In support of her first point of error, Ramirez argues that JPMorgan Chase Bank, Nat. Ass'n v. Benner, 137 Hawai'i 326, 372 P.3d 358 (App. 2016) should be applied retroactively to show that mortgagee-purchaser Aurora failed to meet its initial burden to establish that the non-judicial foreclosure sale of the property was conducted in a manner that was fair, reasonably diligent, and in good faith, and that an adequate price was procured for the property.

"Although judicial decisions are assumed to apply retroactively, such application is not automatic. . . . Where substantial prejudice results from the retrospective application of new legal principles to a given set of facts, the inequity may be avoided by giving the guiding principles prospective application only." Catron v. Tokio Marine Mgmt., Inc., 90 Hawai'i 407, 411, 978 P.2d 845, 849 (1999) (emphasis added) (brackets omitted) (citing State v. Ikezawa, 75 Haw. 210, 219-21, 857 P.2d 593, 597-98 (1993) (footnote omitted)).

In Benner, this court relied on the Supreme Court of Hawai'i's opinion in Kondaur Capital Corp. v. Matsuyoshi, 136 Hawai'i 227, 361 P.3d 454 (2015), which "clarified" that the duties set forth in Ulrich v. Sec. Inv. Co., 35 Haw. 158 (Haw. Terr. 1939) remain viable law and are applicable to non-judicial foreclosures of real property mortgages. 137 Hawai'i at 327, 372 P.3d at 359 (citing Kondaur, 136 Hawai'i at 229, 361 P.3d at 456). "Ulrich requires mortgagees to exercise their right to non-judicial foreclosure under a power of sale in a manner that is fair, reasonably diligent, and in good faith, and to demonstrate that an adequate price was procured for the property." Id. (quoting Kondaur, 136 Hawai'i at 240, 361 P.3d at 467).

In Kondaur, the supreme court stated that, to maintain an ejectment action, the plaintiff must (1) prove that he or she owns the parcel in issue, meaning that he or she must have the title to and right of possession of such parcel, and (2) establish that possession is unlawfully held by another. Kondaur

6

136 Hawai'i at 241, 361 P.3d at 468 (citations omitted). When a party receives title to a property through a non-judicial foreclosure sale, the strength and validity of the title "is unavoidably intertwined with the validity of the foreclosure sale." Id. (citation omitted). The court in Kondaur additionally clarified that:

> In instances where the mortgagee assumes the role of a purchaser in a self-dealing transaction, the burden is on the mortgagee, or its quitclaim transferee or non-bona fide successor, to establish its compliance with these obligations. Its failure to do so would render the foreclosure sale voidable and could therefore be set aside at the timely election of the mortgagor.

Id. at 240, 361 P.3d at 467 (citations and footnotes omitted). Thus, in a self-dealing transaction, where the mortgagee is the purchaser in a non-judicial foreclosure sale, the mortgagee has the "burden to prove in the summary judgment proceeding that the foreclosure 'sale was regularly and fairly conducted in every particular.'" Id. at 241, 361 P.3d at 468 (citation omitted).

Applying these principles to the facts of the case, the supreme court held that Kondaur, as a quitclaim transferee of a self-dealing mortgagee, failed to satisfy its initial burden because:

> [t]he only evidence produced by Kondaur with respect to the manner in which the sale was conducted was derived from RLP's Affidavit of Sale prepared by Leu, [mortgagees's] attorney. The Affidavit of Sale merely "certifies that in compliance with and pursuant to Hawaii Revised Statutes 667-5 through 667-10 and th[e] . . . Mortgage, Mortgagees or its representative, or Affiant or her representative" conducted the non-judicial foreclosure sale in compliance with all statutory requirements and the terms of the Mortgage. But the Affidavit of Sale fails to provide any averments as to the fairness and regularity of the foreclosure sale or as to whether [mortgagee] conducted the foreclosure sale in a diligent and reasonable manner. . . . Although the Affidavit of Sale states that the Property was sold for $416,900.20 at the foreclosure sale, it does not make any declaration concerning the adequacy of this price.

Id. at 242-43, 361 P.3d at 469-70 (footnotes omitted).

Similarly, in Benner, this court held:

> Here, JPMorgan Chase assumed the role of a purchaser in a self-dealing transaction because JPMorgan Chase was the mortgagee and the highest bidder at the non-judicial foreclosure sale. Thus, pursuant to Kondaur and Ulrich, JPMorgan Chase had the initial burden to establish that the non-judicial foreclosure sale was conducted in a manner that

> was fair, reasonably diligent, and in good faith, and to demonstrate that an adequate price was procured for the property.
>
> Like in Kondaur, the Affidavit of Sale prepared by JPMorgan Chase's attorney was the only evidence produced in this case to show the manner in which the non-judicial foreclosure sale was conducted, and it provides that JPMorgan Chase complied with the mortgage and HRS §§ 667-5 through 667-10. However, similar to the affidavit in Kondaur, the Affidavit of Sale does not attest to anything concerning the adequacy of the purchase price. Thus, given Kondaur, JPMorgan Chase did not satisfy its initial burden of showing that the foreclosure sale was conducted in a manner that was fair, reasonably diligent, in good faith, and would obtain an adequate price for the property. Because JPMorgan Chase did not satisfy its initial burden for summary judgment, the burden never shifted to Benner to raise any genuine issue of material fact. Thus, we need not address Benner's points of error as they relate to defenses to the ejectment action. Under Kondaur, the grant of summary judgment for JPMorgan Chase was in error.

137 Hawai'i at 328-29, 372 P.3d at 360-61.

In Kondaur, the supreme court expressed that it was clarifying that the principles previously set forth in Ulrich were applicable to non-judicial foreclosures. 136 Hawai'i at 239-40, 361 P.3d at 466-67. Thus, Kondaur and Benner may apply properly to the instant case. See Catron, 90 Hawai'i at 411, 978 P.2d at 849; Ikezawa, 75 Haw. at 219-21, 857 P.2d at 597-98.

In the instant case, the only evidence attached to Aurora's MSJ for Possession with respect to the manner in which the non-judicial foreclosure sale was conducted were Aurora's Affidavit of Foreclosure Sale and Grant Deed. Aurora's Affidavit of Foreclosure Sale does not describe the manner in which the non-foreclosure sale was conducted. Aurora's Grant Deed only provides that:

> pursuant to Grantor's foreclosure rights under power of sale as provided in Sections 667-5 through 667-10, Hawaii Revised Statutes, and that certain Mortgage . . . and duly noted as Transfer Certificate Title No. XX, and in accordance with the terms of said Notice, the Grantor herein duly held a public auction on September 10, 2010[.]

Furthermore, although Aurora's Affidavit of Foreclosure Sale states that the highest bid on Ramirez's property was $265,000 and that the highest bidder was Aurora or its designee, neither the Affidavit nor the Grant Deed attest to anything concerning the adequacy of the purchase price.

Consequently, under Kondaur and Benner, Aurora has not satisfied its initial burden of showing that the non-judicial

foreclosure sale was conducted in a manner that was fair, reasonably diligent, in good faith, and would obtain an adequate price for the property. In turn, the burden never shifted to Ramirez to raise any genuine issue of material fact in this regard. Therefore, the circuit court erred in granting Aurora's MSJ for Possession.

**B.     Points of Error 2-6**

Ramirez next argues that the circuit court erred in granting summary judgment for Appellees in the Quiet Title Action, specifically with regards to her claims for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel as an alternative theory, unfair and deceptive acts and practices, and wrongful foreclosure. Ramirez's First Amended Complaint sets out her general theory regarding these claims, asserting that she applied for a loan modification under HAMP and entered into a Trial Period Plan with Aurora, that she complied with the terms of the Trial Period Plan, but Aurora did not. She alleges generally in the First Amended Complaint that:

> [d]espite the fact that [Ramirez] fully complied with the terms of the HAMP Trial Period Plan by making the required monthly payments and providing her financial information, [Aurora] failed to permanently modify [Ramirez's] loan after the initial three months of payments as required under the HAMP Trial Period Plan. [Aurora] subsequently denied [Ramirez's] permanent HAMP loan modification it had promised in August 2010 after accepting over 11 payments totaling over $30,000.00.

> The Trial Period Plan provides, in relevant part:

> I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (I) I meet all of the conditions required for modification, (II) I receive a fully executed copy of a Modification Agreement, and (III) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

> . . . .

9

> If I comply with the requirements in Section 2 and my
> representations in Section 1[3] continue to be true in all
> material respects, the Lender will send me a Modification
> Agreement for my signature which will modify my Loan
> Documents as necessary to reflect this new payment amount
> and waive any unpaid late charges accrued to date.

(Emphasis added).

The parties agree that terms of the Trial Period Plan required Ramirez to (1) make three monthly payments; and (2) submit updated financial information and documentation. The parties also agree that Ramirez made the three monthly payments.

However, the parties dispute whether Ramirez in fact provided the required documentation pursuant to the Plan.

Aurora's Motion for Summary Judgment in the Quiet Title action includes a Declaration of Laura McCann (**McCann**), a Vice President of Aurora Commercial Corp., successor entity to Aurora Bank FSB. McCann's Declaration states that Ramirez failed to provide Aurora with the required documentation pursuant to the Trial Period Plan, and cites to attached Exhibits I and J which are letters from Aurora to Ramirez, stating that Aurora has not received all the documentation necessary to finalize their review of her qualifications for the loan modification.

In Ramirez's Declaration attached to her opposition to Aurora's motion for summary judgment in the Quiet Title Action, Ramirez attests that:

> 23. In compliance with the Trial Period Plan, I made
> the required three monthly payments of $925.30 from October
> 2009 to December 2009, and provided my updated financial
> information and documentation to Aurora Loan Services just
> as I had previously done.
> 24. However, according to Aurora Loan Services,
> because I did not provide the financial information, it
> extended the HAMP Trial Period Plan, whereby I made monthly
> payments of $925.30 in January 2010 and February 2010, and
> continued to make payments of $960.00 from March 2010 to
> August 2010. The accounting of my payments during the
> period I was considered under HAMP from May 2009 to August
> 2010 is documented in Aurora Loan Services letter to me
> dated December 1, 2010, which is attached as Exhibit 12.
> 25. Despite the fact that I fully complied with the
> terms of the HAMP Trial Period Plan by making the required
> monthly payments and providing my financial information,

---

[3] Section 1 of the Trial Period Plan requires that the applicant certify certain facts regarding the applicant's financial situation, i.e. that applicant is unable to afford his or her mortgage payments, and provide documentation regarding income. Section 2 of the Trial Period Plan requires that the applicant make three monthly payments pursuant to the Plan.

> Aurora Loan Services failed to permanently modify the loan after the initial three months of payments as required under the HAMP Trial Period Plan. Aurora Loan Services subsequently denied my permanent HAMP loan modification it had promised in August 2010 after accepting over 11 payments totaling over $30,000.00.

(Emphasis added).

In its Answering Brief, Aurora argues that the "undisputed facts" in the instant case show that "Ramirez <u>did not</u> comply with the terms of the HAMP Trial Period Plan and she was denied permanent modification because of it." (Emphasis in original). Aurora further argues:

> Ramirez submitted no evidence to overcome the fact that she was denied a permanent modification for her failure to provide the required documentation. While Ramirez's affidavit [sic] stated that she did submit the requested documentation, self-serving and conclusory statements -- without supporting or corroborative evidence -- are insufficient to create a genuine issue of material fact.

Aurora cites to this court's decision in <u>Chuck Jones & MacLaren v. Williams</u>, 101 Hawai'i 486, 71 P.3d 437 (App. 2003) for the proposition that conclusory statements, in and of themselves and devoid of specific supporting facts, are not sufficient to raise genuine issues of material fact.

However, the Hawai'i Supreme Court recently addressed how courts must accord the weight given to a declaration submitted in opposition to summary judgment in <u>Nozawa v. Operating Eng'rs Local Union No. 3</u>, 142 Hawai'i 331, 418 P.3d 1187 (2018), stating in relevant part:

> Pursuant to HRCP Rule 56(e) (2000), affidavits supporting or opposing a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Thus, affidavits that state ultimate or conclusory facts cannot be used in support of or in opposition to a motion for summary judgment.
>
> . . . .
>
> HRCP Rule 56(e) provides that affidavits shall set forth facts based on personal knowledge. Thus, an affidavit by its nature includes an affiant's own perception of the matter.
>
> HRCP Rule 56(e) does not preclude an affidavit from being self-serving. Indeed, . . . "most affidavits submitted [in response to a summary judgment motion] are self-serving." Thus, a party's self-serving statements that otherwise

> comply with HRCP Rule 56(e) can be utilized to defeat summary judgment.
>
> Additionally, HRCP Rule 56(e) <u>does not require a statement in an affidavit to be corroborated in order to be a qualifying affidavit under the rule. Nor has this court ever held that an uncorroborated statement by a party to the litigation is insufficient to raise a dispute as to a material fact</u>.
>
> . . . .
>
> "Conclusory" is defined as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based." An "inference" in turn is "a conclusion reached by considering other facts and deducing a logical consequence from them." Thus, when an assertion in an affidavit expresses an inference without setting forth the underlying facts on which the conclusion is based or states a conclusion that is not reasonably drawn from the underlying facts, the assertion is considered conclusory and cannot be utilized in support of or against a motion for summary judgment. On the other hand, <u>an inference within an affidavit that is based on stated facts from which the conclusion may reasonably be drawn is not conclusory</u> and may be used to support or oppose a motion for summary judgment.

<u>Id.</u> at 338-39, 418 P.3d at 1194-95 (emphasis added) (citations and footnotes omitted); <u>see also</u> <u>Wakefield v. Bardellini</u>, No. CAAP-16-0000821, 2018 WL 2316510, at *3-4 (Hawai'i App. May 22, 2018) (SDO).

Here, Ramirez's statement in her Declaration that she "provided [her] updated financial information and documentation to Aurora" pursuant to her Second Application constitutes specific, factual information personally known to her. Although Ramirez did not include any additional evidence to support this statement, the statement did not amount to legal conclusion because it was essentially factual in nature and did not attempt to apply a legal standard. Ramirez's conclusion that she "fully complied" with the terms of the HAMP Trial Period Plan because she had submitted the required documentation is a conclusion which could reasonably be drawn from the stated underlying facts. Therefore, under <u>Nozawa</u>, Ramirez's statement that she submitted the required documentation was not conclusory and was in compliance with HRCP Rule 56(e). <u>See</u> <u>Nozawa</u>, 142 Hawai'i at 338-40, 418 P.3d 1194-96.

The factual issue of whether Ramirez sent the required documentation is material to all of Ramirez's points of error related to the Quiet Title Action. Had Ramirez sent the required

documentation, it appears she would have been in compliance with the Trial Period Plan, and Aurora would have been obligated to send the Modification Agreement to Ramirez for her signature, which would modify her loan documents. Therefore, the circuit court erred in granting summary judgment in the Quiet Title Action in favor of Aurora.

Given our ruling above, we need not address Ramirez's point of error related to HRCP Rule 56(f).

## V. Conclusion

Therefore, the consolidated "Final Judgment" entered by the Circuit Court of the First Circuit on March 14, 2016, is vacated. This case is remanded to the circuit court for further proceedings consistent with this opinion.

DATED: Honolulu, Hawai'i, December 27, 2018.

On the briefs:

Gary Victor Dubin,
Richard T. Forrester,
for Appellant.

Jade Lynne Ching,
Lori King Stibb,
for Defendants-Appellees.

Chief Judge

Associate Judge

Associate Judge

13